UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

ERNESTO PELAYO,
          Appellant,

       v.

DEPARTMENT OF HOMELAND
    SECURITY,
          Agency.

DOCKET NUMBER
SF-0752-20-0286-I-1

DATE:  January 15, 2025

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Ryan C. Nerney, Esquire, Ladera Ranch, California, for the appellant.

Lauren J. Johnson, Esquire, San Diego, California, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed his removal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to recognize and apply the proper standards for the agency's charge and the appellant's disability discrimination claims and to address the appellant's argument that the agency's requirement that he undergo a fitness for duty examination constituted disability discrimination, we AFFIRM the initial decision.

The following facts, as further detailed in the parties' stipulations and the initial decision, appear to be undisputed. Initial Appeal File (IAF), Tab 18 at 16-18; Tab 22 at 8-11; Tab 24 at 3-6; Tab 35, Initial Decision (ID) at 2-5. The appellant began working as a Customs and Boarder Protection Officer (CBPO) in 2005. ID at 2. In November 2016, he had an off-duty accident in which he suffered multiple fractures in his spine and hip. *Id*. After 2 months of leave and extensive medical treatment, the appellant returned to a light duty assignment. ID at 2-3. A couple of months later, the appellant returned to his assignment with the agency's Anti-Terrorism Contraband Enforcement Team, though his physician indicated that he could work no more than 8 hours per day. ID at 3. That restriction continued until August 2017, when the appellant's physician indicated that he could work no more than 12 hours per day. *Id*. Subsequent communications from the appellant's physician maintained similar restrictions,

citing degenerative joint disease in the hip, as well as pain and stiffness. *Id*.; IAF, Tab 5 at 22.

In February 2019, the agency ordered that the appellant undergo a fitness for duty examination. ID at 4; IAF, Tab 17 at 20. This included an independent medical exam by a family practitioner in April, IAF, Tab 5 at 7-16, followed by an independent medical exam by an orthopedist in June, IAF, Tab 4 at 72-78, Tab 5 at 41-47, then a review of medical information by a third physician in August, IAF, Tab 4 at 66-68. The latter two provided their opinion about the appellant's condition as it related to his position, with each concluding that he was not medically fit for duty as a CBPO. IAF, Tab 4 at 66-71.

In September 2019, the agency proposed the appellant's removal for inability to perform the full range of duties. IAF, Tab 4 at 62-64. The appellant responded to the proposal and provided a note from the physician who performed his 2016 surgery indicating that the appellant was fit for duty. ID at 4; IAF, Tab 5 at 39. At that point, the fitness for duty physicians who had previously opined that the appellant was not fit issued a supplemental report indicating that their opinions were unchanged. IAF, Tab 4 at 52-60. Then, in January 2020, the agency offered to reassign the appellant to a non-law enforcement position, but he declined the offer. *Id*. at 33, 61. The next month, February 2020, the deciding official effectuated the appellant's removal. ID at 5; IAF, Tab 4 at 47-50.

The appellant filed the instant appeal to challenge his removal. IAF, Tab 1. After developing the record and holding the requested hearing, the administrative judge affirmed the action. She first found that the agency proved its charge. ID at 14-21. Next, the administrative judge found that the appellant failed to prove his claims of disparate treatment disability discrimination, ID at 21-24, disability discrimination based on a failure to accommodate, ID at 25-29, harmful procedural error, ID at 29-32, or a violation of due process rights, ID at 32-33. Lastly, she found that the agency established the requisite nexus and reasonableness of its penalty. ID at 33-35.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. He challenges the administrative judge's findings regarding proof of the charge and credibility, *id*. at 9-14, 22-26, disability discrimination, *id*. at 14-19, harmful procedural error, *id*. at 19-21, and nexus, *id*. at 21-22. The agency has filed a response. PFR File, Tab 3.

<u>The administrative judge applied an inapplicable legal standard to the agency's charge.</u>

Once again, the agency proposed and then effectuated the appellant's removal based on a single charge of inability to perform the full range of his CBPO duties. IAF, Tab 4 at 47, 62. The administrative judge analyzed this charge under 5 C.F.R. § 339.206 and the standard set out in *Sanders v. Department of Homeland Security*, 122 M.S.P.R. 144, ¶ 11, *aff'd per curiam*, 625 F. App'x 549 (Fed. Cir. 2015), finding that the agency proved its charge by establishing that the appellant had a disqualifying medical condition that poses a reasonable probability of causing substantial harm. ID at 13-14, 21.

Though not raised by either party on review, we find section 339.206 and the *Sanders* standard inapplicable. *See* 5 C.F.R. § 1201.115(e) (providing that, although the Board normally will consider only issues raised by the parties on review, it reserves the authority to consider any issue in an appeal before it). As explained below, section 339.206 and *Sanders* do not apply to this appeal because the agency did not remove the appellant based solely on his medical history; rather, it removed the appellant based on a current medical condition and inability to perform.

In *Haas v. Department of Homeland Security*, 2022 MSPB 36, we revisited the Board's precedent concerning a medical inability to perform charge when the employee occupied a position that was subject to medical standards, e.g., the position of CBPO. We overruled a number of cases on this point, including *Sanders*, and found that 5 C.F.R. § 339.206 should not be universally applied in removals based on medical inability to perform. *Id*., ¶¶ 11-16. Rather,

section 339.206 only applies to removals that are "solely on the basis of medical history." *Id*., ¶¶ 11-12.

Regardless of whether a position is subject to medical standards, if an agency removes an employee for inability to perform because of a current medical condition or impairment, the agency must prove either a nexus between the employee's medical condition and observed deficiencies in his performance or conduct, or a high probability, given the nature of the work involved, that his condition may result in injury to himself or others. *Id*., ¶¶ 15, 20 & n.3. The Board has otherwise described the standard as requiring that the agency establish that the appellant's medical condition prevents him from being able to safely and efficiently perform the core duties of his position. *Id*., ¶¶ 15, 20.

In the instant appeal, the agency did not remove the appellant based solely on his medical history. The agency instead removed him because of his current medical condition. The proposal to remove the appellant cited his degenerative joint disease, pain, stiffness, and the appellant's own medical submissions, which indicated that he was still limited in terms of the number of hours he could work in a day. IAF, Tab 4 at 62. The proposal also cited additional ongoing limitations described in the fitness for duty examinations, such as ones concerning his lifting capacity, climbing, bending, and stooping. *Id*. Accordingly, section 339.206 does not apply.

As modified to apply the correct legal standard, we affirm the administrative judge's conclusion that the agency proved its charge.

Although the administrative judge rendered the initial decision in this appeal before we issued *Haas* and, consequently, misapplied 5 C.F.R. § 339.206, remand is unnecessary because the record is fully developed on the relevant issues. *See Haas*, 2022 MSPB 36, ¶ 20. Because the agency removed the appellant based on a current medical condition, its burden was to prove either a nexus between the employee's medical condition and observed deficiencies in his performance or conduct, or a high probability, given the nature of the work

involved, that his condition may result in injury to himself or others. *Id*. In other words, the agency must establish that the appellant's medical condition prevents him from being able to safely and efficiently perform the core duties of his position. *Id*. While determining whether the agency has met this burden, the Board will consider whether a reasonable accommodation, short of reassignment, exists that would enable the appellant to safely and efficiently perform those core duties. *Id*., ¶ 25.

The core duties of a position are synonymous with the essential functions of a position under the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), i.e., the fundamental job duties of the position, not including marginal functions. *Id*., ¶ 21. One of the bases for finding that a function is essential is that it is the "reason the position exists." *Id*.; 29 C.F.R. § 1630.2(n)(2)(i).

According to the relevant position description and associated medical standards, CBPOs are weapon-carrying border security officers whose "primary function" includes "detect[ing] and prevent[ing] terrorists and instruments of terror from entering the United States" and ensuring border security. IAF, Tab 5 at 27-30, 74-82. A CBPO must be "prepared mentally and physically to respond to unexpected situations and have the functional capacity to defend self and others from threatening situations in which the use of deadly force may be necessary." *Id*. at 27. Among other things, the physical demands of the position "range from sedentary to arduous" and include "sustained heavy manual labor," as well as "extended or unscheduled hours." *Id*. at 28. In addition, the CBPO must be able to "escalate quickly . . . to pursue then physically control a suspect and sprint or run at full speed for 150 feet to respond to an emergency." *Id*. at 29.

Although the administrative judge applied the legal framework for a removal based on a medical history, she made well-reasoned findings regarding conflicting arguments and evidence about the appellant's condition. ID at 14-21. Most notably, she recognized differences in the treatment notes and hearing

testimony of the various physicians who examined the appellant or reviewed his fitness for duty. ID at 14-20. The administrative judge also considered the appellant's performance during the period leading up to his removal, finding that it did not outweigh medical evidence about his limitations. ID at 20-21. Ultimately, she was most persuaded by the fitness for duty orthopedic examiner and the fitness for duty consultant, who both indicated that the appellant was not fit. ID at 19-20; *see, e.g.*, IAF, Tab 4 at 52-60, 67-78, Tab 30, Hearing Compact Disc, Day 1 (testimony of fitness for duty consultant and fitness for duty orthopedic examiner).

Broadly speaking, the fitness for duty orthopedic examiner relied on the appellant's subjective reports, diagnostic imaging, and a physical exam to determine that the appellant was limited in terms of lifting, pushing, pulling, climbing, bending, stooping, crouching, crawling, working on uneven surfaces, and working more than 12 hours. IAF, Tab 4 at 72-78. The fitness for duty orthopedic examiner concluded that the appellant was "not fit to safely and efficiently perform all the essential duties of [the CBPO position], without restrictions." *Id*. at 77. In a supplemental report, he elaborated. *Id*. at 69-71. Among other things, the fitness for duty orthopedic examiner explained how some of the physical requirements of the CBPO position would put the appellant at risk of injury and increase his pain. *Id*. at 69. Specific to a question about responding to a sudden physical attack, he surmised that the appellant may have difficulty protecting himself or others. *Id*. at 70. The fitness for duty orthopedic examiner also described the appellant as having "no endurance" and unable to maintain a high standard of physical conditioning. *Id*. The fitness for duty consultant agreed with the fitness for duty orthopedic examiner. *Id*. at 66-68.

On review, the appellant challenges the administrative judge's findings about his alleged inability to perform. He first reasserts that successful performance during the period leading up to his removal demonstrates that he was not medically unable to perform. PFR File, Tab 1 at 9-11. We disagree. It is

apparent that the CBPO position is unique in that an incumbent may not often encounter a life-or-death physical altercation, but they must be prepared for such an encounter to occur in an instant. *Supra* p. 6. Although the appellant's successful performance in the period leading up to his removal may be indicative of his medical ability to perform at least some functions of the CBPO position, we are aware of no persuasive argument or evidence that he successfully engaged in the type of physical altercations a CBPO must be prepared for during the same period. The appellant argues that he had the highest arrest rate among his peers, but his petition contains nothing to suggest that any of those arrests were particularly combative. He has not pointed us to evidence of him successfully pursuing and apprehending uncooperative individuals, protecting himself or others, or engaging in any of the additional tasks identified by clinicians as limited by his medical condition, such as those concerning heavy lifting. IAF, Tab 4 at 62, 67-70. More importantly, the appellant's recent performance does not negate the prevailing medical opinion regarding his underlying condition and the risk it posed in terms of further injury or handicap to the appellant if he were to continue performing the CBPO position. *E.g., id*. at 69; *see Haas*, 2022 MSPB 36, ¶ 19 (rejecting arguments that past successful performance outweighed current medical impressions).

The appellant's next set of arguments concern the administrative judge's weighing of medical opinions.[2] PFR File, Tab 1 at 11-14. In short, he argues that the administrative judge afforded too much weight to the clinicians who indicated the appellant was not fit for duty and not enough to those who indicated otherwise. *Id*. While we have considered these arguments, we find no basis for disturbing the administrative judge's well-reasoned conclusions. *See Haas*, 2022 MSPB 36, ¶¶ 24, 26 (agreeing with an administrative judge's weighing of

---

[2] To the extent it may have caused any confusion, we recognize that the administrative judge seems to have inadvertently referred to one of the clinicians by her first name, at times. *Compare* IAF, Tab 4 at 68 (identifying the clinician's full name), *with* ID at 4 (referring to her by last name), *and* ID at 19 (referring to her by first name).

medical evidence to find an independent medical examiner more persuasive than the appellant's treating clinician).

In sum, we find that the administrative judge properly considered factors such as the length of any treating relationship with the appellant, any specialization of the clinicians, the extent of any physical exam, and witness demeanor to weigh the conflicting medical records and opinions. ID at 14-20; *see Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶ 11 (2014) (recognizing these as some of the factors to consider while assessing the probative weight of medical opinions). The appellant's arguments on review do not persuade us to disturb the administrative judge's conclusions about which medical reports and opinions were most persuasive, or the relevance of the appellant's past performance. We further find that, under the proper legal framework, i.e., the one for a current medical condition rather than a history of medical condition, the agency met its burden. The record establishes that the appellant's current medical condition prevents him from being able to safely and efficiently perform the core duties of his CBPO position, thereby proving the agency's medical inability to perform charge.

<u>The appellant failed to establish that the agency engaged in disability discrimination because he did not meet his burden of proving that he is a qualified individual with a disability, as that term is defined under the relevant statutes.</u>

The administrative judge considered but rejected the appellant's claims that the agency engaged in disability discrimination. ID at 21-29. First, she found that the appellant's disparate treatment claim failed because there was no evidence that the removal was improperly motivated by the appellant's disability. ID at 24. Second, she found that the appellant's failure to accommodate claim failed because the appellant was not a qualified individual with a disability. ID at 28-29. We modify the administrative judge's analysis but agree that these claims fail.

The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. *Haas*, 2022 MSPB 36, ¶ 28. The Rehabilitation Act has incorporated the standards of the ADA, as amended by the ADAAA. *Id*. Therefore, we apply those standards here to determine if there has been a Rehabilitation Act violation. *Id*. In particular, the ADAAA provides that it is illegal for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8). An employer is also required to provide reasonable accommodations to an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5).

A claim of disability discrimination based on an individual's status as disabled and a claim based on an agency's failure to reasonably accommodate that disability both require that the individual be "qualified." *Haas*, 2022 MSPB 36, ¶¶ 28-30. Accordingly, if the administrative judge properly determined that the appellant's failure to accommodate claim failed because he was not "qualified," that conclusion also would be dispositive for his disparate treatment claim and any discussion of the agency's motive would be unnecessary. *Id.*, ¶ 30.

A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Haas*, 2022 MSPB 36, ¶ 28. The appellant argues that he meets this standard because he could perform the essential functions of his CBPO position and had been doing so during the period leading up to his removal. PFR File, Tab 1 at 16-19. He suggests that the only accommodation he needed was a limitation of working no more than 12 hours per day. *Id*. The administrative judge disagreed. She found that the appellant was not "qualified" because the essential functions of the CBPO

position were physically rigorous duties, which the appellant could not perform without risking his own safety or the safety of others. ID at 28-29.

We agree with the administrative judge. The appellant's arguments on this point essentially mirror those regarding the agency's charge. He disputes the medical evidence and opinions that the administrative judge found most persuasive and argues that his performance during the period leading up to his removal demonstrates that he can perform as a CBPO. But we are unmoved. *See Haas*, 2022 MSPB 36, ¶ 30 (discounting an appellant's argument that his performance history supported a finding that he was qualified).

Based on the prevailing medical evidence and opinions, the appellant was unable to perform the essential functions of his CBPO position without risking his own safety or the safety of others, regardless of the number of hours worked. In addition, the appellant rejected an offer of reassignment prior to his removal, and we found no indication that the appellant has ever identified any other alternative position or other accommodation that he desired beyond the already-provided limitation in his hours. IAF, Tab 4 at 33, 61; *see Haas*, 2022 MSPB 36, ¶ 30 (finding that an appellant did not establish his failure to accommodate claim when he was unable to perform the essential functions of his CBPO position and he did not identify any alternative position desired as an accommodation). Accordingly, the administrative judge correctly determined that the appellant's claim of disability discrimination based on an alleged failure to accommodate fails because the appellant did not prove that he is a qualified individual with a disability. For the same reason, his disparate treatment claim fails as well.

Although not addressed by the administrative judge, the appellant appears to be arguing that the fitness for duty exam he was ordered to undergo was inappropriate and is evidence of disability discrimination. *E.g.*, IAF, Tab 18 at 7, 10; PFR File, Tab 1 at 16. While we have found that the appellant is not a qualified individual with a disability, the statute and implementing regulations

limit examinations or inquiries of "an employee," not just qualified individuals with a disability. 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.14(c); *see Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 31 (2014) (citing *Watkins v. Potter*, EEOC Appeal No. 01981800, 2001 WL 1097442, at *2 (Aug. 29, 2001) (indicating that "[t]he ADA's restrictions on inquiries and examinations apply to all employees")). For the reasons that follow, we modify the initial decision to consider this allegation and find that the agency did not err.

The ADAAA significantly restricts the medical inquiries that an agency may make of an employee. *Martin v. U.S. Postal Service*, 2022 M.S.P.R. 22 ¶ 11; *Archerda*, 121 M.S.P.R. 314, ¶ 29 & n.6. Under the ADAAA, an agency may require a medical examination or make a medical inquiry regarding whether an employee "is an individual with a disability or as to the nature or severity of the disability" only when such inquiry or examination "is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). It is the employer's burden to show that its disability-related inquiries and requests for examination are job related and consistent with business necessity. *Martin*, 2022 M.S.P.R. 22, ¶ 12; *Archerda*, 121 M.S.P.R. 314, ¶ 31.

Ordinarily, a disability-related inquiry or medical examination may be "job related and consistent with business necessity" if an employer "has a reasonable belief, based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition." *Martin*, 2022 M.S.P.R. 22, ¶ 12 (citations omitted); *Archerda*, 121 M.S.P.R. 314, ¶ 30. However, when an employee occupies a position that is subject to medical standards or physical requirements, as here, 5 C.F.R. § 339.301(b)(3) authorizes an agency to order a medical examination whenever there is a reasonable belief, based on objective evidence, that there is a question about the employee's continued capacity to meet the physical requirements or medical standards of the position. *See* IAF, Tab 5 at 27-30, 74-82.

Here, the letter ordering the appellant to undergo the fitness for duty exam explicitly cited section 339.301 and indicated that the agency had a direct question about the appellant's continued capacity to meet the physical or medical requirements of his CBPO position. IAF, Tab 17 at 20. Therefore, that is the standard under which we consider the propriety of his fitness for duty exam.

As previously discussed, the appellant occupies a CBPO position that is physically demanding. *E.g.*, IAF, Tab 5 at 27-30, 74-82. He had an off-duty accident in November 2016 that resulted in multiple fractures to his spine and hip, requiring 2 months of leave before he could return to any work. *E.g.*, IAF, Tab 18 at 16. The appellant would eventually return to the assignment he had prior to his accident in March 2017, with the only remaining limitation described by his physician being a requirement that he work no more than 8 hours per day. *Id*. However, by May 2017, his physician was still describing the appellant's fractures as in the process of healing. *Id*. A few months later, the appellant submitted documentation from a new physician indicating that he could work as many as 12 hours at a time. *Id*. at 17. Through subsequent communications, he extended this limitation through at least November 2019. *Id*.

The agency's February 2019 order that the appellant undergo its fitness for duty exam cited the latest note it had from the appellant's treating physician. IAF, Tab 17 at 20 (referencing IAF, Tab 5 at 22). That November 2018 doctor's note described the appellant injuries in 2016 and indicated that current imaging showed that he had degenerative joint disease in the hip. IAF, Tab 5 at 22. It also described the appellant as developing pain and stiffness in that hip after standing for more than 12 hours. *Id*. According to the agency's instruction that he undergo a fitness for duty exam, this "rais[ed] questions . . . regarding [the appellant's] continued capacity to perform the full range of duties of [his] position in a safe and effective manner." IAF, Tab 17 at 20.

The official who ordered the appellant to undergo the fitness for duty exam was the Assistant Port Director. IAF, Tab 17 at 20-21. The appellant called him

as a witness at the hearing below. IAF, Tab 24 at 6, Tab 33 at 2. While testifying, he indicated that he did not know the appellant personally, and he only learned of the appellant's 2016 injury when the November 2018 medical note was passed along the chain of command to him. IAF, Tab 32, Hearing Compact Disc, Day 2 (testimony of Assistant Port Director). The Assistant Port Director explained that he had only recently joined that office a few months earlier, so he had not previously been involved in the situation and that he was not aware of the details concerning how the situation had been handled before. *Id*. But he would later provide additional context, testifying that he did not have a predecessor, and the appellant's division had been lacking in terms of managerial oversight and administrative functioning, which led to the creation of his position. *Id*. The Assistant Port Director suggested that this lack of oversight may have been the reason why the appellant had not been ordered to undergo a fitness for duty exam earlier. *Id*. According to the Assistant Port Director, the appellant was one of several employees he ordered to undergo fitness for duty exams as he familiarized himself with the division, its employees, and their situations. *Id*.

Upon questioning about the rationale for ordering the appellant's fitness for duty exam, the Assistant Port Director testified that he was concerned about the medical report indicating that the appellant had degenerative joint disease, which was a recent diagnosis and one he knew little about. *Id*. He further provided that although the appellant's doctor only described a limitation on him standing or working more than 12 hours, that called into question whether the appellant could perform other CBPO functions that were even more physically demanding. *Id*. The Assistant Port Director gave examples, such as confrontations with noncompliant travelers or detainees and jumping on trucks or trains. *Id*. He summarized by stating that the medical information the appellant submitted gave him cause for concern about whether the appellant met the medical requirements of the position—a position he was very familiar with from his years with the agency. *Id*.

As the appellant's counsel confronted the Assistant Port Director about the delay between his receipt of the November 2018 medical note and his February 2019 order for a fitness for duty exam, the Assistant Port Director attributed the delay to a government shutdown and the agency's administrative process, which involved him making the ultimate decision, but only after consulting with others, including an agency nurse. *Id*. He also explained that he felt he had no choice from an administrative standpoint but to allow the appellant to continue working while waiting for the fitness for duty exam and follow-ups, despite his concerns about the appellant's ability to perform. *Id*.

Under these circumstances, we find that the agency had ample reason to question whether the appellant met the medical requirements of his position in the immediate aftermath of his November 2016 accident. Although the appellant recovered to a significant degree over the ensuing years, he continued to submit medical documentation indicating that he had at least some persisting limitations and abnormalities, particularly ones involving his hip. *E.g.*, IAF, Tab 5 at 22. Meanwhile, his CBPO position had medical standards indicating that the demands of the position were arduous and included, inter alia, "sustained heavy manual labor," the ability to "pursue then physically control a suspect," as well as the ability to crawl and jump from heights of 4-5 feet. *Id*. at 28-29.

In the absence of any persuasive evidence to the contrary, we find that the Assistant Port Director's testimony provided a reasoned explanation for his decision to order the fitness for duty exam that comports with 5 C.F.R. § 339.301(b)(3). Throughout this appeal, the appellant has continually pointed to his successful performance during the period leading up to his fitness for duty exam and removal to argue that neither was warranted. *E.g.*, PFR File, Tab 1 at 16. While we have considered the same, for the reasons explained above we find that the agency had a legitimate question about his ability to meet the medical requirements of the CBPO position; thus, he has not shown that the agency violated statutes or regulations prohibiting disability discrimination when

it sent him for the fitness for duty examination.  *See* 42 U.S.C. § 12112(d) and 29 C.F.R. §§ 1630.13(b), 1630.14(c).

<u>The administrative judge correctly found that the appellant failed to prove any harmful procedural error.</u>

The administrative judge considered but rejected the appellant's various arguments concerning harmful procedural error.  ID at 29-32.  In his petition for review, the appellant reasserts some of his harmful procedural error claims, arguing that the agency erred by failing to follow the procedures required by both 5 C.F.R. § 339.303(b) and a provision within the applicable collective bargaining agreement.  PFR File, Tab 1 at 19-21.

According to the appellant, section 339.303(b) required that the agency send the records from the fitness for duty clinicians and the records from his own surgeon to another specialist to resolve their conflicting conclusions about the appellant's ability to perform the CBPO position.  *Id*. at 19-21.  We, however, agree with the administrative judge's determination that the appellant failed to establish any error regarding this regulation, much less a harmful one.  ID at 29-31.  Generally speaking, the relevant language from section 339.303(b) provides that if an agency's medical exam conflicts with the medical records of an employee's own providers, and the agency's medical examiner cannot resolve the conflict, the agency "may" seek another opinion from an appropriate specialist.  The provision does not require that the agency seek that additional opinion from another specialist, nor does it preclude the agency from obtaining a supplemental report from its fitness for duty examiners, as it did in this case.  *Compare* IAF, Tab 4 at 66-72 (August 2019 reports from the agency's fitness for duty clinicians, indicating that the appellant was unable to perform), *with* IAF, Tab 5 at 39 (September 2019 report from appellant's physician, indicating that he was able to perform), *and* IAF, Tab 4 at 52-60 (December 2019 and January 2020 reports from agency's fitness for duty clinicians, considering but discounting the opinion of the appellant's physician).

Turning to the appellant's collective bargaining agreement, he argues that a particular provision requires that the agency observe applicable rules and regulations about fitness for duty exams, which would encompass 5 C.F.R. § 339.303(b). PFR File, Tab 1 at 21. But again, we are not persuaded by his arguments pertaining to that regulation. He has not established a harmful error concerning section 339.303(b) or any collective bargaining agreement requiring compliance with the same.

The administrative judge correctly found that the agency established the requisite nexus between the appellant's removal and the efficiency of the service.[3]

The administrative judge lastly found that the agency met its burden regarding nexus and the reasonableness of its penalty. ID at 33-35. Among other things, she considered the appellant's post-removal treatment records but found that it did not establish that the appellant was recovered. *Id*. (discussing IAF, Tab 18 at 250-52). On review, the appellant challenges the administrative judge's findings on that point. He argues that post-removal medical evidence unambiguously shows that he has recovered, so his removal does not promote the efficiency of the service. PFR File, Tab 1 at 21-22 (citing IAF, Tab 18 at 252).

The Board has recognized that even when an agency proves by preponderant evidence that the appellant was unable for medical reasons to perform the duties of his position when he was removed, the removal action will be reversed on the basis that such action does not promote the efficiency of the service if, during the pendency of the Board appeal, the appellant presents new medical evidence showing that he has recovered such that he is able to perform the essential duties of his position. *See, e.g., Johnson v. U.S. Postal Service*,

---

[3] The Board does not typically undertake a full penalty analysis in nondisciplinary removals, and we decline to do so here. *See Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶¶ 4, 18 (2014) (finding that the analysis of the penalty under *Douglas* does not apply when the agency's action is based on physical inability to perform, consistent with the Board's practice of not applying them to nondisciplinary matters), *overruled on other grounds by Haas*, 2022 MSPB 36, ¶ 14.

120 M.S.P.R. 87, ¶ 8 (2013); *Street v. Department of the Army*, 23 M.S.P.R. 335, 340-43 (1984). Here, the post-removal evidence the appellant presented was documentation of a single visit with an orthopedic surgeon in April 2020. IAF, Tab 18 at 250-52. The appellant describes the associated exam as more thorough than that of the fitness for duty exams. PFR File, Tab 1 at 21-22. However, the corresponding record to which he has referred is quite limited. Based on a current exam and X-ray, the physician indicated that the appellant "has no restrictions in the open labor market and may participate in his job without any restrictions." IAF, Tab 18 at 252. However, the physician reached that conclusion without any mention of the appellant's prior limitations or his job duties, and without even acknowledging that the appellant had occupied a CPBO position. *Id.* In addition, it appears that the physician was relying on the appellant's own subjective reporting, which was less than forthcoming. According to this physician's recounting of why the appellant was seeking his opinion, the individuals responsible for the agency's fitness for duty exams "never even performed a physical examination," *id.*, which is untrue. Additionally, unlike the fitness for duty physicians who did testify, this physician did not, so we have nothing more than his brief examination note. Therefore, we agree with the administrative judge. The appellant's limited post-removal medical evidence does not unambiguously show that he recovered while this appeal was pending, so his removal for medical inability to perform does promote the efficiency of the service.

## NOTICE OF APPEAL RIGHTS[4]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court

of appeals of competent jurisdiction.[5]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[5] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.